## SMITH v SMITH
### Case No. 87-1818 CA
Nineteenth Judicial Circuit, Martin County
May 23, 1990

### APPEARANCES OF COUNSEL

**William D. Anderson, Esquire,** for plaintiff.
**Peter T. Gianino, Esquire,** for defendant.

### OPINION OF THE COURT

JOHN E. FENNELLY, Circuit Judge.

THIS IS a grim case, Von Clauswitz would undoubtedly characterize it as marital, *Toten Krieg.* At the vortex of parental warfare is a five year old girl, Amanda. A comprehensive discussion of the facts is necessary to demonstrate the reasons for the Court's action and to illustrate the animosity and hatred that has permeated this case.

The parties were married in February of 1983 and separated in November of 1987. Priot the marriage the parties co-habitated without benefit of matrimony for approximately five years. Amanda was born on October 16, 1984.

146

In 1987 the couple and Amanda moved to Florida. In November of that year, after the former wife attempted suicide, the couple separated. Ms. Singer, without benefit of any Court Order, returned with Amanda to New Jersey. Undeterred, Mr. Smith went to New Jersey and also engaged in what may be called creative self-help. That self-help consisted of surreptitiously returning to Florida with Amanda. Neither party ever bothered to tell the other what they intended to do. Upon his return to Florida, Mr. Smith filed for Dissolution and obtained temporary custody of Amanda. To use a military analogy the parties up to this point were like armies engaged in preliminary skirmishing. Mortal marital combat was the next stage. This period could be likened to the blood letting of the Somme in World War I. The parties in a relentless battle for custody hurled allegations of sex abuse, drug abuse and neglect like artillery barrages. Ministers, CPT workers, law enforcement officers, HRS and the criminal justice system were pressed into service and hurled into the escalating battle.

The evidence is unrebutted that the former wife, after the temporary hearing that gave temporary custody to the husband, made a statement to a co-worker at Amanda's school. In that statement Ms. Singer indicated that she didn't want the child to see the father and that she was "Going to get even". There is also evidence in the record that the wife, before initiating the sexual abuse complaint against the husband, had possession of the HRS manual on child abuse, and had received training in child abuse recognition. There is further testimony that before the child was interviewed concerning possible sexual abuse by the father, the mother rehearsed the child and used a doll to assist the child during the rehearsal. Ms. Singer, for some reason, neglected to inform any one of these facts. As a result of Ms. Singer's efforts, the former husband was arrested and served eight months in jail before being found Not Guilty in a criminal trial. The record also reflects that Ms. Singer has, on occasion, interfered with Court ordered visitation and prevented the father from seeing Amanda. There is also evidence in the record that indicates that Ms. Singer may be dependent on tranquilizers.

Mr. Smith, for his part, has, during the course of post criminal trial battles, been found in contempt once. He has also engaged in continued harassment of the former wife. There is, at present, a pending Motion for Contempt filed by the former wife alleging yet another violation of a Court Order. This is mentioned only insofar as it illustrates the unabated ferocity and animosity that has pervaded this case. Thus the record demonstrates, in my mind, that both participants will go to almost any lengths to achieve their goals.

147

This Court is convinced that there is, on the facts, at least a *prima facie* showing that the former wife orchestrated and initiated a process that led to the former husband's incarceration and trial on criminal charges. In effect the former wife successfully manipulated the system, overcame the effect of the temporary order and cut off visitation for eight months. Since the trial she has found a rear guard action to thwart visitation at every opportunity. Her testimony to the effect that she would not oppose visitation is singularly unconvincing.

As indicated previously the former husband is, in the Court's view, every bit as willing, to pick up the cudgels and engage in battle at every opportunity. This Court, however, is bound by a different standard and must be concerned with only one goal, the best interests of Amanda. No matter how repugnant the tactics of the parties, that and that alone is the standard. The credible psychological testimony, the testimony of the child's teacher and neighbors indicates that the child is doing well. Dr. D. Zaccheo has testified that there is nothing to be gained and possible harm if the present arrangements are disturbed. The doctor also, in his opinion, believes that Amanda cares about, loves and wants to please both parents. She wants, in Dr. Zaccheo's view, to see both parents, needs peace, and above all needs not to be a football.

Based on the totality of the circumstances and applying the statutory criteria the Court is convinced that any change in primary physical residence would not be in *her* best interest. That and only that, is what this Court must concern itself with.

It, at first blush, seems that the Court is, in effect, rewarding potential manipulation of the judicial process. That view would be true if this lawsuit was about injunctive relief, money damages, or fraud. The result, however, is not and can not be intended to vindicate or punish. The result must be about the best interest of the child thrust, unwillingly, into this strife. She did not ask for nor deserve what has happened.

This Court must and will act to protect her, even from her own parents. If conscience is the velvet glove of equity then contempt is its iron fist. If conscience fails, sterner measures will be used, if necessary, to protect this child.

Based on the foregoing, the husband is directed to commence payments of child support in the amount of One Hundred Seventy-seven Dollars and Eighty-four Cents ($177.84) per month through the Clerk of the Circuit Court on June 1, 1990. The Court's Standard Visitation Order will remain in full force and effect. The Court retains

148

jurisdiction to determine any further matters, including counselling for the child, that the parents are unable to resolve. Each side shall bear its own fees and costs. The Court further retains jurisdiction to enforce, as may be necessary, all prior orders and such other relief as may be appropriate and necessary for the protection of the best interest of Amanda.

DONE and ORDERED, in Chambers, Stuart, Martin County, Florida, this 23rd day of May, 1990.